UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
UNITED STATES OF AMERICA,

      -against-               <u>MEMORANDUM AND ORDER</u>
                                            06-CR-550

DAWN SCHLEGEL, SANDRA HATFIELD,
and DAVID H. BROOKS,

          Defendants.
-----------------------------------X

APPEARANCES:
For Government:     James Halleron Knapp, Esq.
                   Richard Thomas Lunger, Jr., Esq.
                   Christopher Allen Ott, Esq.
                   United States Attorneys Office
                   610 Federal Plaza
                   Central Islip, NY 11722-4454

For Defendants:
Sandra Hatfield     Roland G. Riopelle, Esq.
                   Sercarz & Riopelle LLP
                   152 West 57th Street, 24th Floor
                   New York, NY 10019

David H. Brooks     James M. LaRossa, Esq.
                   240 West End Avenue
                   New York, NY 10023

                   Herald Price Fahringer, Esq.
                   120 East 56th Street
                   New York, New York

                   John C. Meringolo, Esq.
                   Meringolo and Associates, P.C.
                   1790 Broadway Suite 1501
                   New York, NY 10019

                   Zaki I. Tamir, Esq.
                   Gofer Tamir and Associates
                   55 Broad Street, 26th Floor
                   New York, NY 10004

SEYBERT, District Judge:

      Pending before the Court is Defendant Sandra Hatfield's

("Hatfield") motion to sever her trial from co-defendant David H.

Brooks ("Brooks") under Federal Rule of Criminal Procedure 14(a), Defendant Brooks' motion to sever his trial from Hatfield's, and both Defendants' motion to sever the tax counts from the non-tax counts in the Superseding Indictment.[1]

<u>BACKGROUND</u>

On August 16, 2006, the government indicted Hatfield, the former Chief Operating Officer of D.H.B Industries, Inc. ("DHB") for conspiracy to commit securities fraud, substantive securities fraud, and insider trading. On October 24, 2007, the government filed a Superseding Indictment (hereinafter, the "Indictment") against Hatfield and added Brooks, the founder and former Chief Executive Officer of DHB, as a co-defendant. Both Defendants were charged with conspiracy to commit and substantive securities fraud, conspiracy to commit mail and wire fraud, mail fraud, wire fraud, conspiracy to obstruct justice, obstruction of justice, and conspiracy to impair, impede, obstruct, and defeat the Internal Revenue Service ("IRS"). The Indictment separately charges Hatfield with three counts of insider trading and one count of tax evasion, and charges Brooks with six counts of insider trading, one count of making material misstatements to auditors, and two counts

_____

[1] Although Hatfield and Brooks move separately to sever the tax charges applicable to each Defendant from the non-tax charges, the arguments set forth by the Defendants are similar and often overlap, and as such, the Court addresses the motions to sever the tax charges as one motion for the purposes of this Order.

of filing false tax returns.

On November 13, 2007, Defendant Hatfield filed a motion to sever her trial from co-defendant Brooks, which this Court denied on January 8, 2008. On May 27, 2008, Hatfield renewed her motion to sever, arguing primarily that her right to a speedy trial would be violated if her trial is not severed from Brooks' trial. On November 3, 2008, Brooks filed a motion to sever his trial from Hatfield on the grounds that a joint trial would involve antagonistic defenses and would deprive Brooks of vital exculpatory evidence. Brooks' motion additionally seeks to sever the tax charges against him from the non-tax charges. On November 21, 2008, Hatfield joined Brooks' motion to sever the tax counts. For the reasons stated below, the Court GRANTS Defendants' motion to sever the tax counts from the non-tax counts, DENIES Hatfield's motion to sever based upon her speedy trial rights, and reserves decision on Defendants' motions to sever to avoid substantial prejudice until after oral argument.

<u>DISCUSSION</u>

I.  <u>Motion to Sever the Tax Charges</u>

A.  <u>Legal Standard</u>

Federal Rule of Criminal Procedure 8(a) permits joinder of offenses in an indictment "if the offenses charged -- whether felonies or misdemeanors or both – are of the same or similar character, or are based on the same act or transaction, or are

3

connected with or constitute parts of a common scheme or plan."
Rule 8(b) allows joinder of defendants if the defendants "are
alleged to have participated in the same act or transaction, or in
the same series of acts or transactions, constituting an offense or
offenses." Fed. R. Crim. Proc. 8(a). "[W]hen a defendant in a
multiple-defendant case challenges joinder of offenses, his motion
is made under 8(b) rather than 8(a)." United States v. Turoff, 853
F.2d 1037, 1043 (2d Cir. 1988) (internal quotations omitted). The
Second Circuit has not yet clarified "whether Rule 8(a) or Rule
8(b) applies when a defendant in a multi-defendant, multi-count
prosecution . . . challenges the joinder of a count in which he is
the only defendant charged." United States v. Shellef, 507 F.3d
82, 97 (2d Cir. 2007). However, the Court's resolution of the
motion to sever the tax counts is the same regardless of which
subdivision of Rule 8 applies.

 "[T]ax counts can properly be joined with non-tax counts
where it is shown that the tax offenses arose directly from the
other offenses charged." United States v. Turoff, 853 F.2d 1037,
1043 (2d Cir. 1988) (internal quotations omitted). The Second
Circuit has guided that "[t]he most direct link possible between
non-tax crimes and tax fraud is that funds derived from non-tax
violations either are or produce the unreported income." Id.
However, if the character of the funds derived do not convince [the
Court] of the benefit of joining these two schemes in one

4

indictment, other overlapping facts or issues may." <u>Id.</u>

    B.   <u>The Tax Charges</u>

        1.   <u>Count Eighteen Against Brooks and Hatfield</u>

Count Eighteen of the Indictment (the "Conspiracy Tax Count") charges Brooks and Hatfield with knowingly and willfully conspiring "to defraud the United States by impeding, impairing, obstructing and defeating the lawful government functions of the Internal Revenue Service . . . in the ascertainment, computation, assessment and collection of . . . federal income taxes." The Government alleges that Defendants approved and distributed bonus payments to employees of DHB for the years 2003, 2004 and 2005, and informed the employees that they did not have to report the payments as income or pay taxes on the bonus amount. The Indictment further alleges that Defendants recorded the bonus payments in DHB's books and records as consulting fees or payments for outside services.

        2.   <u>Counts Nineteen, Twenty, and Twenty-one</u>

Counts Nineteen, Twenty, and Twenty-one (the "Individual Tax Counts") charge Defendants with filing false and fraudulent income tax returns. Count Nineteen charges Brooks with failing to report $189,400 in dividend and interest payments he received from DHB in his United States Joint Income Tax Return, IRS Form 1040, for the calendar year 2003. Count Twenty charges Brooks with reporting $762,500 in compensation from DHB for the calendar year

2004, whereas Brooks allegedly received more than $1,700,000 for that year.[2]  Count Twenty-one charges Hatfield with filing false tax returns for the years 2003, 2004 and 2005, wherein Hatfield allegedly failed to report in excess of $600,000 in income she received from DHB.

      C.    <u>The Tax Counts are Not Sufficiently Related to the Non-Tax Counts</u>

Defendants argue that Counts Eighteen through Twenty-One are not adequately related to the non-tax counts.  With respect to the Conspiracy Tax Count, Defendants maintain that the funds derived from the non-tax counts did not produce the allegedly unreported income at issue in Count Eighteen, proof of the Conspiracy Tax Count does not depend upon proof of the non-tax charges, and Count Eighteen and the non-tax charges do not depend upon one another.  Similarly, Defendants argue that the Individual Tax Counts are unrelated to the non-tax charges, and the allegedly unreported income in the Individual Tax Counts did not derive from the securities fraud and insider trading charges alleged in the remainder of the Indictment.

The Government argues that overlapping issues, such as the timing of the tax counts and the non-tax counts, weigh in favor

---

[2] In response to Brooks' request for a Bill of Particulars, the Government elucidated that the unreported income consisted of $1 million in personal bonus income, $93,409 in interest income, $273,804 in actual dividend income, and $241,900 in bonuses paid by DHB Industries to non-DHB employees.

of joinder.  The Government further argues that Defendants' alleged insider trading provided the "modus operandi, their knowledge and the absence of mistake for the defendants' tax evasion."  (Opp. at 7.)  Finally, the Government maintains that the tax evasion charges are based upon funds allegedly illegally obtained from the acts described in the non-tax charges.  The Court disagrees.  While the timing of Count Twenty and the non-tax counts may be similar, this, standing alone, is an insufficient basis for allowing joinder.

As the Government correctly notes, the Court must look to the Indictment itself to determine the facts relevant to the severance motion.  See United States v. Rittweger, 524 F.3d 171, 178 (2d Cir. 2008) ("[T]he plain language of Rule 8(b) does not appear to allow for consideration of pre-trial representations not contained in the indictment.").  Here, the Indictment does not support joinder of the non-tax counts and the tax counts.

The non-tax charges essentially allege that Defendants engaged in a "variety of fraudulent schemes" of which the ultimate goals were to enrich Brooks and Hatfield "by deceiving DHB shareholders and the investing public." (Indictment ¶ 17.)  There are no allegations in the Indictment that the acts charged in the Tax Counts furthered Defendants' goal of deceiving shareholders and the investing public, nor is there any basis to believe that the allegedly unreported funds were obtained from the charges alleged in the non-tax counts.

7

The Individual Tax Counts allege that Defendants failed to report various income in their Income Tax Forms. Count Nineteen alleges that Brooks failed to include $189,400 in dividend and interest payments he received from DHB. The $189,400 consisted of an interest payment from DHB in the amount of $94,409.39, relating to a loan Brooks previously made to the company, and a dividend check in the amount of $95,961.68, relating to shares of preferred DHB stock Brooks owned. Brooks' failure to report this income has no bearing on his alleged securities fraud and insider trading, and this unreported income would not impact the investing public's perception of DHB's financial strength.

Additionally, the Indictment does not allege that this unreported income was derived from Brooks' alleged scheme to falsely inflate DHB's stock trading price. Regardless of whether DHB's assets were fraudulently inflated, DHB still had an obligation to return funds received from Brooks as a loan, and to pay dividends on preferred stock Brooks owned.

Likewise, Counts Twenty and Twenty-One charge Brooks and Hatfield with failing to report income that is unrelated to the alleged scheme to defraud the investing public. The unreported income in these Counts has no bearing on the trading price of DHB stock. Moreover, on the face of the Indictment, there are no allegations that Brooks would not have received the 2003 bonus monies referenced in County Twenty, or that Hatfield would not have

received the bonus in Count Twenty-One, if Defendants had not filed false SEC filings and had not allegedly falsely inflated the value of DHB's assets.

Finally, the Court rejects the Government's argument that the "money looted from DHB provides the motivation for all of the crimes," and thus there is a likelihood that evidence of both crimes will be admissible in a separate trial. While it is true that evidence is property admitted under Fed. R. Evid 404(b) in a tax evasion trial where the tax liability is based upon money illegally obtained from crimes charged in a separate trial, here, the Indictment fails to show that Defendants' procured the allegedly unreported income from the alleged securities and insider trading crimes.

In United States v. Mickens, 926 F.2d 1323, 1329 (2d Cir. N.Y. 1991), which the Government cites to, evidence of the defendant's prior involvement in narcotics activity was properly admitted because it "was relevant to the prosecution's tax evasion and money laundering theory that narcotics sales provided the cash which [the defendant] spent so lavishly." Here, as noted above, on the face of the Indictment, there is no basis for the Court to believe that Defendants' insider trading and alleged securities' fraud provided the allegedly unreported income in the Individual Tax Counts. There are no allegations that the bonuses and other income in the Individual Tax Counts were paid out of the proceeds

of the alleged non-tax frauds.  In sum, the Government has not set forth, and the Court has not found, any basis to believe that the evidence needed to prosecute Brooks for allegedly failing to report this income is duplicative or overlaps with the evidence the Government will introduce against Brooks in the securities and insider trading counts.

Count Eighteen is also insufficiently linked and does not arise from the remaining offenses in the Indictment.  Count Eighteen alleges that Defendants directed employees not to report year-end bonuses as wages, and recorded the bonus payments in DHB's books and records as consulting fees or payments for outside services.  Informing DHB employees that they need not pay income taxes on year-end bonus payments is unrelated to Defendants alleged securities fraud and insider trading or the ultimate goal of enriching Defendants by defrauding the investing public.  Whether the employees paid income taxes on the bonuses would have no bearing on the investors' perception of DHB and would have no impact on manipulating DHB's share market price.  Additionally, reporting the bonus payments as consulting fees or payments for outside services would not artificially inflate DHB's stock price or affect the company's perceived profits.  "Unguided by an allegation of how the unreported income related to the conspiracy, the Court will not hypothesize about how they could be related." United States v. Stein, 2008 U.S. Dist. LEXIS 58024, at *7

(S.D.N.Y. July 31, 2008).

In sum, the Court finds that joinder would be improper because there is an insufficient connection between the tax counts and the non-tax counts. Thus, the Court GRANTS Defendants' motion to sever Counts Eighteen through Twenty-one from the non-tax counts.

II. <u>Defendant Hatfield's Motion to Sever on Speedy Trial Grounds</u>

On May 27, 2008, Defendant Hatfield filed a renewed motion to sever arguing that the Court's adjournment of the trial date in this case from September 2008 until April 2009 violates Hatfield's constitutional right to a speedy trial. Since the filing of Hatfield's motion, the Court has again adjourned the trial date, at the request of both Defendants, from April 2009 to September 2009.

Federal Rule of Criminal Procedure 14 permits a district court to sever a trial if "it appears that a defendant or the government is prejudiced by a joinder." Fed. R. Crim. P. 14. "A defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in substantial prejudice." <u>United States v. Amato</u>, 15 F.3d 230, 237 (2d Cir. 1994) (internal quotation marks omitted). There is a preference, in the federal system, for defendants who are indicted together to be tried together. <u>United States v. Diaz</u>, 176 F.3d 52, 102 (2d Cir. 1999) (citing to <u>Zafiro v. United States</u>, 506 U.S. 534, 537,

113 S. Ct. 933, 122 L. Ed. 2d 317 (1993). The Supreme Court has instructed that Rule 14 severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

Hatfield argues that her right to a speedy trial mandates severance under Rule 14. The Court disagrees. Although the Speedy Trial Act states that a criminal defendant must be tried within seventy days of his indictment or initial appearance before the Court, the Act allows for a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted" and allows a continuance where "the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." See 18 U.S.C. § 3161. Both exclusions are applicable here.

As noted in the Court's January 8, 2008 Order, this Court has already designated this case as complex. Further, the first adjournment of this trial was granted to provide Brooks, a newly-added defendant, with an opportunity to prepare for trial. See United States v. Cephas, 937 F.2d 816, 821 (2d Cir. N.Y. 1991)

12

("Under the speedy trial act, we have previously held that 'delay attributable to a codefendant is excludable speedy trial time as to all defendants.'") (quoting United States v. Nixon, 779 F.2d 126, 130 (2d Cir. 1985)).

However, while normally the delay caused by a co-defendant's motions in a joint trial "could be attributed to all the defendants without analyzing whether the delay was reasonable," the analysis changes where, as here, a defendant makes a severance motion that was denied. See United States v. Cephas, 937 F.2d 816, 822 (2d Cir. 1991). Because Hatfield has already "made a severance motion that was denied, [the Court] must examine the reasonableness of any delay caused by a co-defendant's motion before it can be excluded as against the complaining defendant." Id.

Since the Court's January 2008 denial of Hatfield's motion to sever, both Defendants have filed numerous motions, and have repeatedly represented to the Court that discovery has been tedious and extensive and thus they will not be prepared for an April 2009 trial date. On December 15, 2008, Roland G. Riopelle, counsel for Hatfield, stated, "I will tell the Court that we are doing our best to be prepared for trial, but given the thousands and thousands of documents that have been dumped on us . . . we need to have some additional time . . . We're asking for a brief adjournment of perhaps a couple of months . . . ." (Tr. 48 Dec. 15, 2008.) Thereafter, on January 30, 2009, Riopelle stated that he

would not be able to proceed with the April 2009 date, and asked that the trial be adjourned to the summer of 2009. Given the complexity of this case and the voluminous discovery, an adjournment was warranted and reasonable.

In addition to the reasonableness of the delay in this matter, it is clear to the Court that an adjournment is warranted in the interests of allowing both Defendants adequate time to prepare for trial. At the January 30, 2009 conference, the Court advised the parties that it was ready to try the case and that it was reluctant to grant another adjournment in light of the public's interest in trying this case. See United States v. Paul, 326 F. Supp. 2d 382, 388 (E.D.N.Y. 2004) (the "right to a speedy trial is the right of the defendant as well as a right of the public in general."). However, in light of both Defendants' representations that they would not be prepared for a Spring trial, the Court granted an adjournment to September 2009 to provide both Defendants with a fair opportunity to prepare their defense.

It is thus clear to the Court that Hatfield has not only contributed to the delay in this case, but has affirmatively requested a delay. A defendant cannot acquiesce and contribute to a delay, and then simultaneously argue that the delay violates her speedy trial rights. See United States v. Gambino, 59 F.3d 353, 360 (2d Cir. 1995) (citing United States v. Kucik, 909 F.2d 206, 211 (7th Cir. 1990) ("Where a defendant actively participates in a

14

continuance . . . he cannot then 'sand-bag' the court and the government by counting that time in a speedy trial motion"); <u>United States v. Gregory</u>, 611 F. Supp. 1033, 1041 (S.D.N.Y. 1985) (defendant's "own role in delaying trial . . . and the absence of any substantial prejudice to his defense as a result of this delay . . . defeats his claim that his constitutional right to a speedy trial has been violated."). The Court finds that Hatfield has contributed to the delay in this case, and has not shown that she has been substantially prejudiced by the adjournment of the trial date. Rather, counsel for Hatfield has represented on more than one occasion that an adjournment would be beneficial and would allow Hatfield to prepare her defense adequately. Thus, the Court DENIES Hatfield's motion to sever on speedy trial grounds.

<u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS Defendants' motions to sever the tax counts from the non-tax counts, DENIES Defendant Hatfield's motion to sever on speedy trial grounds, and reserves decision on Defendants' motions to sever to avoid prejudice until after oral argument.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     Central Islip, New York
           March ___16___, 2009

15