

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*United States Attorney's Office*
*610 Federal Plaza*
*Central Islip, New York  11722-4454*

May 10, 2010

BY HAND and ECF

The Honorable Joanna Seybert
United States District Judge
Eastern District of New York
1034 Federal Plaza
Central Islip, New York 11722

       Re:   United States v. Brooks and Hatfield
            Cr. No. 06-550 (S-2)(JS)

Dear Judge Seybert:

      The government respectfully asks the Court to reconsider its decision to exclude the Cablevision exhibits and strike the testimony discussing those exhibits (the "Cablevision Evidence").  For the following reasons, the Cablevision Evidence was properly admitted and should remain before the jury.

      <u>First</u>, the Court should not strike the Cablevision Evidence because such a decision legitimizes the $300,000, which is a disputed issue of fact that should be decided by the jury.  The government contends that Brooks was not entitled to $300,000 for his Florida apartment.  Indeed, there is neither a Board of Directors meeting, nor a Board resolution, declaring that $300,000 constitutes the fair market rental value of the Florida apartment.  In addition, the actual expenses for Brooks's Florida apartment are not $300,000 a year.  In 2004, the actual expenses associated with Brooks's Florida apartment were only $100,761.  (A copy of the 2004 Boca expenses, marked as DB-DS-900, is attached hereto as Exhibit 1.)  And in 2005, the expenses were only $155,248.  (A copy of the 2005 Boca expenses, marked as DB-DS-901, is attached hereto as Exhibit 2.)  Having DHB pay him more than the actual expenses incurred for his apartment is another example of Brooks's looting.

      Moreover, if the government is correct and Brooks was not entitled to $300,000, then Brooks did not pay for the Cablevision bills.  But if the evidence is struck, the jury will

not be permitted to make that determination. Instead, the Court will be making that decision for them. Indeed, the reason the Court would be striking the Cablevision Evidence is that Brooks paid the Cablevision bills with the $300,000. He could only pay the bills if he was entitled to the entire $300,000. Accordingly, by striking the Cablevision Evidence, the Court is concluding that Brooks was entitled to $300,000, thus usurping the jury's role as the fact finder.[1]

Moreover, if Your Honor's decision to strike the Cablevision Evidence stands, it has far-reaching consequence beyond just the $300,000. In addition to legitimizing the $300,000, the Court also would be legitimizing the depreciation expense on the Florida apartment contained in the Audit Committee Report. As Your Honor knows, the Audit Committee Report stated that Brooks was entitled to unreimbursed depreciation on his Florida apartment. The government contends that Brooks was not entitled to millions of dollar of depreciation on his Florida apartment. Because Brooks did not incur $300,000 in expenses for his Florida apartment, as discussed above, the remaining monies must be compensating Brooks for some other expense, namely depreciation on his apartment. Thus, by striking the Cablevision Evidence and determining that Brooks was entitled to $300,000 for his Florida apartment, the Court is implicitly legitimizing the unreimbursed depreciation expense in the Audit Committee Report. Obviously, whether DHB should have paid Brooks for depreciation on his Florida apartment-an appreciating asset-is a critical disputed issue of fact that should be decided by the jury.

Second, even if the question of whether Brooks was entitled to $300,000 for his Florida apartment was not a disputed issue of fact-which the government contends it is-the government must be allowed to prove that all the expenses Brooks applied against the $300,000 were personal, otherwise Brooks could argue that those expenses were actually for business purposes, and therefore, DHB owes him monies for those business expenses.

In 2005, the expenses associated with Brooks's Florida apartment were only $155,248. Brooks then used the remaining $145,000 to pay expenses associated with his New York home, including his Cablevision bills. (A copy of the 2005 Red Ground expenses, marked as DB-DS-903, is attached hereto as Exhibit 3.)

---

[1] It is clear from Brooks's proposed questions for the jurors that he agrees that, by striking the Cablevision Evidence, the Court is determining that the $300,000 is legitimate. (See docket entry 1003 questions 2 and 3.)

3

Brooks's employment agreement, however, requires DHB to pay business expenses that Brooks incurred for the business use of his New York residence, such as information services and Entertainment expenses.  (A copy of Brooks's 2000 employment agreement is, marked as Government Exhibit 5017, is attached hereto as Exhibit 4.)  Thus, if the government did not prove the non-business nature of the Cablevision bills and the other expenses associated with Brooks's New York residence, the door would be left open for Brooks to argue that those were business expenses that DHB should have paid for (i.e., Cablevision is an information service because he needs to watch CNBC and other business-related stations to carry out his duties as CEO of DHB). Indeed, Brooks could argue that his employment agreement required DHB to pay for those expenses.  The result would be that Brooks improperly paid for expenses that DHB should have paid for.  As a result, Brooks would say that he is still owed money from the Company.  Those monies could be used to offset his other looting.

In fact, that is exactly what Brooks did in 2004 when the S.E.C. was investigating him.  He came up with post-hoc unreimbursed business expenses (e.g., depreciation on his Florida apartment) that he used to offset the personal expenses that DHB paid for.  Not only has he done this in the past, he intends to do it at this trial.  Indeed, Brooks noticed Kenneth McGraw as an expert who will testify regarding "the amounts that the Company contractually owed to Mr. Brooks that were not paid (such as unpaid salary, reimbursements for the business use of Mr. Brooks' residences and his airplane, and reimbursement for the cost of Mr. Brooks' life insurance)."  (Brooks Letter, dated April 30, 2010, at 2 (docket entry 988).)  For these reasons, it is imperative that the government be permitted to prove that all the expenses Brooks purportedly "paid for" were personal expenses.

Clearly, Brooks cannot argue that the Cablevision expenses were business expenses now.  But that is only because the government has foreclosed those arguments by putting the actual Cablevision bills before the jury.  Had the government not done that, Brooks would have been free to argue that the Cablevision expenses were for business.  Accordingly, the Cablevision Evidence was properly admitted and should not be struck.

Finally, the nature of the Cablevision Evidence is not unfairly prejudicial, and certainly does not substantially outweigh the probative value of that evidence.  It is worth noting that Brooks is not asking to strike the testimony regarding Chubb, Stasi, Sun Carting or other expenses relating to his New York home that he supposedly paid for with the $300,000.

4

\* \* \*

For the foregoing reasons, the government respectfully asks the Court to reconsider its decision to strike the Cablevision Evidence.

                                           Respectfully submitted,

                                           BENTON J. CAMPBELL
                                           UNITED STATES ATTORNEY

By:        /s/
       Christopher C. Caffarone
       Assistant U.S. Attorney
       (631) 715-7868

cc:  All Parties (Via ECF)