UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA,

-against-

MEMORANDUM AND ORDER
06-CR-0550 (JS)

SANDRA HATFIELD, DAVID H. BROOKS,
PATRICIA LENNEX,

Defendants.
------------------------------------X

APPEARANCES:

For Government: Richard Thomas Lunger, Jr., Esq.
Christopher Allen Ott, Esq.
James Halleron Knapp, Esq.
James M. Miskiewicz, Esq.
United States Attorneys Office
610 Federal Plaza
Central Islip, NY 11722-4454

For Defendants:

Sandra Hatfield: Roland G. Riopelle, Esq.
Maurice H. Sercarz, Esq.
Sercarz & Riopelle, LLP
152 West 57th Street, 24th Floor
New York, NY 10019

David Brooks: John C. Meringolo, Esq.
Meringolo and Associates, P.C.
1790 Broadway, Suite 1501
New York, NY 10019

Zaki I. Tamir, Esq.
Gofer Tamir and Assoc.
55 Broad Street
New York, NY 10004

James M. LaRossa, Esq.
240 West End Avenue
New York, NY 10023

Kenneth Ravenell, Esq.
William H. Murphy, Jr., Esq.
The Murphy Firm
1 South Street, 23rd Floor
Baltimore, MD 21202

Richard Ware Levitt, Esq.
Yvonne Shivers, Esq.
Law Offices of Richard W. Levitt
148 E. 78th Street
New York, NY 10021

Roger V. Archibald, Esq.
William C. Thompson, Esq.
16 Court Street
Brooklyn, NY 11241

SEYBERT, District Judge:

Pending before the Court is the Government's motion to exclude certain aspects of Defendant David Brooks' proposed expert testimony. For the foregoing reasons, that motion is GRANTED IN PART AND DENIED IN PART.

I. Professor Christopher M. James

Mr. Brooks intends to call Professor Christopher M. James to testify about the effect certain alleged acts had upon DHB's stock price. The Government argues that such testimony "is commonly known as 'loss causation'" evidence, which the Government contends matters only in civil securities fraud cases. The Government is wrong. Whether the Superseding Indictment's charged acts affected DHB's stock price goes directly to whether this conduct mattered to investors, and thus to materiality. See, e.g., U.S. v. Bilzerian, 926 F.2d 1285, 1298 (2d Cir. 1991) (stock price movement does not establish materiality, but "is a factor the jury may consider relevant"); In re Monster Worldwide, Inc. Sec. Litig., 251 F.R.D. 132,

138 (S.D.N.Y. 2008). Thus, for materiality purposes, it is more than appropriate to bring in an expert witness to address how the incidents at issue affected DHB's stock price. See S.E.C. v. Koenig, 557 F.3d 736, 743 (7th Cir. 2009) (rejecting defense objections to SEC use of expert testimony that addressed materiality by "using stock price changes (net of changes in the market as a whole) to isolate the effects of particular disclosures").

The Government also argues that the Court should exclude Professor James' testimony because the Court precluded the Government's DHB investor witnesses from testifying about their personal losses. This argument is meritless. The Court limited the investors' testimony because, in this case, "victim impact testimony," posed a substantial danger of unfair prejudice while contributing only negligible probative value. See Docket No. 781 at 5. Professor James' dispassionate professional opinion concerning market losses poses no such risks. Professor James will not inflame the jury's passions by testifying about how the alleged frauds caused him to lose his house or cancel cancer treatment. Instead, according to Mr. Brooks' proffer, he will attempt to explain whether DHB's alleged nondisclosures had any economic impact on its stock price. See Docket No. 1002 at 3. Such testimony is highly probative and not remotely prejudicial.

II. Gary Karlitz

The Government also objects to proposed expert Gary Karlitz, on two grounds. First, the Government objects to Mr. Karlitz's proposed testimony concerning TAP's profit margins, which will endeavor to show that TAP earned substantially less than the 50% gross margins the Government has claimed. The Government contends that this testimony is unnecessary because it will stipulate that TAP's profit margins would be lower if "an alternate methodology" was used. Docket No. 993 at 2. But the Government's offer of a stipulation does not negate Mr. Brooks' right to put on his own defense. On its direct case, the Government put forth its own witness, Teresa Bernard, who, aided by charts, testified at length to support the Government's claim that TAP's margin exceeded 50%. The Government cannot, by stipulation, prevent Mr. Brooks from producing his own witness to set forth Mr. Brooks' version of events in a similar manner.

The Government also objects to Mr. Karlitz's testimony concerning whether DHB's related party disclosures were sufficient and reasonable. The Government contends that such testimony goes to the "ultimate issue" in the case, and should accordingly be excluded. Docket No. 993 at 3 (citing Bilzerian, 926 F.2d at 1294). Mr. Brooks responds that Mr. Karlitz will not testimony about the ultimate issue – federal securities law

disclosure requirements – but only about related accounting principles.

The Court agrees with Mr. Brooks. Compliance with applicable accounting standards, such as GAAP, "neither establishes nor shields guilt in a securities fraud case." U.S. v. Rigas, 490 F.3d 208, 220 (2d Cir. 2007). Accordingly, in a federal securities fraud case, jurors are not required to "accept the accountants' evaluation" about "whether a given fact was material." Id. (citations and quotations omitted). So Mr. Karlitz's proposed testimony neither goes to any ultimate issue nor usurps the jury's role. But it is still relevant. This is because compliance with applicable accounting standards "may negate the government's claim of an intent to deceive." Id. (citations and quotations omitted). Thus, Mr. Karlitz can provide his expert opinion concerning DHB's TAP disclosures in relation to the applicable accounting standards.

III. Kenneth McGraw

The Government also seeks to preclude proposed expert Kenneth McGraw from testifying concerning the "reasonableness" of Mr. Brooks' compensation. The Court agrees that Mr. McGraw's testimony should be excluded. As this Court has previously noted, the "reasonableness" of Mr. Brooks' compensation is irrelevant. It is perfectly legal for companies to pay their executives obscene, irrational amounts of money. It is also

perfectly legal for companies to underpay key employees. For purposes of this trial, what matters is not whether Mr. Brooks' compensation was reasonable, but whether DHB authorized it and disclosed it to shareholders. Based on Mr. Brooks' proffer, Mr. McGraw's testimony does not go to either of those factual issues. But it does run the serious risk of confusing the jury into believing that Mr. Brooks' guilt has something to do with whether DHB paid him a reasonable amount. See Cordius Trust v. Kummerfeld, 99-CV-3200, 2008 WL 113683, *5 (S.D.N.Y. 2008) (excluding expert testimony based on risk of jury confusion). Thus, the Court excludes it.

Mr. Brooks also argues that the Government opened the door to Mr. McGraw's "reasonableness" testimony when the Government's witness, Douglas Burns, commented that he would have remembered signing Mr. Brooks' 1996 Employment Agreement because it provided a potentially "staggering amount" of compensation to Mr. Brooks. This argument has some merit, but is ultimately not persuasive. Mr. Burns did not offer an expert opinion. He explained the factual basis for his version of events: he did not sign Mr. Brooks' 1996 Employment Agreement, and recalls not signing it, because he never would have approved the amount of compensation it awarded Mr. Brooks. That being said, Mr. Burns' testimony did open the door to similar factual testimony from defense witnesses.

IV. Gil Wolpin

Lastly, the Government seeks to preclude Gil Wolpin from testifying about the historical market rates for charter aircraft. The Government contends that Mr. Wolpin's testimony is irrelevant because it "has presented no evidence that the hourly rates in the trip schedules were fraudulent." Moreover, the Government contends that: (1) from 2002 until August 12, 2004 ("First Time Period"), Mr. Brooks was entitled only to the "total cost" for the "business use" of his plan, not market charter rates; and (2) from August 12, 2004 onward ("Second Time Period"), Mr. Brooks billed DHB at a specified hourly rate and cannot now claim that he should have billed DHB more. In addition, the Government contends (3) that Mr. Wolpin should not testify about a "dry lease" alternative to Mr. Brooks' arrangement with DHB for use of his plane. The Court discusses each of these issues, in turn.

1. The First Time Period

During the First Time Period, DHB's Board agreed to reimburse Mr. Brooks for the "total cost," of his plane's business use, provided that it did "not exceed the costs of the typical charter services." Gov. Ex. 18032. The Superseding Indictment alleges that Mr. Brooks committed fraud by charging DHB an "inflated charter rate" for those trips. Id. at ¶ 68. Specifically, the Superseding Indictment alleged that Mr. Brooks

bilked DHB out of more than $220,000 by, among other things, charging the Company for "waiting time" and "overnight expenses" that "charter services would not have included." Id. ¶ 68.

But, as noted above, the Board's resolution does not reimburse Mr. Brooks at a "charter rate." It reimburses him for "total cost." Thus, if Mr. Brooks actually expended money on business trips for "waiting time" and "overnight expenses,"[1] the DHB Board resolution permitted him to recover those costs provided that the plane's total cost did not exceed that of a typical charter service. To that end, Mr. Wolpin's testimony is highly probative, because evidence concerning the historical prices for charter services will enable the jury to determine whether DHB excessively reimbursed Mr. Brooks for his plane's business use.[2] On this basis, the Court will not exclude it.

---

[1] Of course, it is also possible that Mr. Brooks billed DHB for fictitious costs associated with "waiting time" or overnight trips. And, as alleged in the Superseding Indictment, some of Mr. Brooks' purported business trips may have been personal in nature. Mr. Wolpin's testimony is neither probative nor prejudicial with respect to these theories.

[2] Based on the Government's opposition to Mr. Wolpin's testimony, it is unclear if the Government is still alleging that Mr. Brooks committed fraud in connection with plane reimbursements during the First Time Period. If the Government no longer contends that "inflated charter rate" fraud occurred during this period, it may so stipulate, alleviating the need for Mr. Wolpin's testimony concerning the First Time Period.

2.  The Second Time Period

During the Second Time Period, Mr. Brooks charged DHB $2,800 an hour for using his plane, and DHB reimbursed him at that rate. The Government does not contend that this hourly rate was excessive. Instead, the Government alleges that Mr. Brooks falsified the "character, length, and purpose" for many of his trips. Accordingly, the Government contends that Mr. Wolpin's testimony concerning historical market prices for charter flights has no probative value.

Mr. Brooks responds that Mr. Wolpin's testimony is relevant "so that the jury can decide whether Mr. Brooks was properly reimbursed for the business use of his airplane." Docket No. 1002 at 11. The Court disagrees. Whether DHB "properly reimbursed" him for his plane is irrelevant. Even if Mr. Brooks could have sought a higher reimbursement rate, DHB does not "owe" him money based on rates he never charged and DHB never agreed to pay. Nor can Mr. Brooks use this supposed "debt," to offset money he allegedly misappropriated for personal expenses. If Mr. Brooks believed that DHB did not "properly reimburse[]" him for his plane, his proper remedy was to litigate in Delaware or New York courts. He was not entitled to "self-help," in the form of unauthorized personal expenses. By analogy, if an employer wrongfully deprives an employee of overtime pay, the employee can commence suit under the Fair

Labor Standards Act. But the employee cannot simply remove his overtime "pay" from the register while the boss is out to lunch.

3. The "Dry Lease" Alternative

The Government also seeks to preclude Mr. Wolpin from testifying about the benefits DHB received by reimbursing Mr. Brooks for his business use of the plane, compared to what it would have spent to formally lease the aircraft from him. The Court agrees that this testimony is irrelevant. Mr. Brooks may be right that this reimbursement arrangement "greatly advantaged" shareholders. But this is not a trial concerning whether Mr. Brooks ever acted in shareholders' best interests. It is whether Mr. Brooks committed specified frauds. And the fact that Mr. Brooks and DHB chose one kind of business relationship (reimbursement) over another (a "dry lease") says nothing about whether Mr. Brooks, in fact, committed those frauds. Such testimony would, however, run the serious risk of befuddling the jury. Accordingly, the Court precludes this testimony.

## CONCLUSION

The Government's motion is DENIED with respect to Professor James and Mr. Karlitz. It is GRANTED with respect to Mr. McGraw. It is GRANTED IN PART AND DENIED IN PART with respect to Mr. Wolpin. Mr. Wolpin may testify only with respect

to the first time period, in a manner consistent with this Order.

SO ORDERED.

/s/
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
May 12, 2010