```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
UNITED STATES OF AMERICA,

           -against-                         MEMORANDUM AND ORDER
                                             06-CR-0550 (JS)

SANDRA HATFIELD, DAVID H. BROOKS,
PATRICIA LENNEX,

                    Defendants.
-----------------------------------X
APPEARANCES:
For Government:      Richard Thomas Lunger, Jr., Esq.
                     Christopher Allen Ott, Esq.
                     James Halleron Knapp, Esq.
                     James M. Miskiewicz, Esq.
                     United States Attorneys Office
                     610 Federal Plaza
                     Central Islip, NY 11722-4454
For Defendants:

Sandra Hatfield      Roland G. Riopelle, Esq.
                     Maurice H. Sercarz, Esq.
                     Sercarz & Riopelle, LLP
                     152 West 57th Street, 24th Floor
                     New York, NY 10019

David Brooks         John C. Meringolo, Esq.
                     Meringolo and Associates, P.C.
                     1790 Broadway, Suite 1501
                     New York, NY 10019

                     Zaki I. Tamir, Esq.
                     Gofer Tamir and Assoc.
                     55 Broad Street
                     New York, NY 10004

                     James M. LaRossa, Esq.
                     240 West End Avenue
                     New York, NY 10023

                     Kenneth Ravenell, Esq.
                     William H. Murphy, Jr., Esq.
                     The Murphy Firm
                     1 South Street, 23rd Floor
                     Baltimore, MD 21202
```

Richard Ware Levitt, Esq.
Yvonne Shivers, Esq.
Law Offices of Richard W. Levitt
148 E. 78th Street
New York, NY 10021

Roger V. Archibald, Esq.
William C. Thompson, Esq.
16 Court Street
Brooklyn, NY 11241

SEYBERT, District Judge:

On May 12, 2010, the Court granted in part and denied in part the Government's motion to exclude certain aspects of Defendant Brooks' proposed expert testimony. The Government has now moved to exclude additional testimony. That motion is GRANTED IN PART, DENIED IN PART and otherwise held in abeyance.

I. Professor Christopher M. James

The Court previously admitted Professor James' proffered testimony, concerning the materiality of the charged conduct. The Government now objects to Professor James' testimony on the basis that, even if admissible, Mr. Brooks has not supplied the Government with Professor James' methodology, work papers, or notes that reveal his analysis. In response, Mr. Brooks belatedly produced this information. The Court hereby gives the Government one week to review Mr. Brooks' most recent production and raise any objections it might have to Professor James' methodology.

II. <u>Gary Karlitz</u>

The Government objects to Mr. Brooks' effort to have his forensic accountant expert, Gary Karlitz, testify about the "the pricing of cores purchased by or for Tactical Armor Products." According to the Government, Mr. Karlitz will testify about what TAP's costs should have been, and "[a]n expert's opinion on what those costs should be is not relevant."

Mr. Brooks responds that the Government is mistaken. According to Mr. Brooks, Mr. Karlitz will not testify about what TAP's costs should have been, but on what they actually were – which the Government concedes is relevant in calculating TAP's gross profit margin. <u>See</u> Docket No. 1031 at 7; Docket No. 1023 at 3 (the Government setting forth that "the relevant facts are whether these cores actually cost TAP $216"). Specifically, Mr. Brooks proffers that Mr. Karlitz will testify "as a summary witness with respect to credit memoranda that TAP issued to Point Blank in 2003," and will set forth that the costs for the ballistic cores set forth on the bill of material submitted to FTI was accurate and not false as the government alleges." Docket No. 1031 at 8.

The Court agrees with Mr. Brooks that, as proffered, Mr. Karlitz's testimony is both relevant and admissible.[1]

---

[1] The Government also argues that, to the extent Mr. Karlitz will testify "regarding the accuracy and sufficiency of the related

Accordingly, the Government's motion to preclude this testimony is DENIED.

III. Kenneth McGraw

Mr. Brooks also noticed Kenneth McGraw as a summary witness who would testify "as to the comparison between (1) the amounts of personal expenditures that the government alleges the Company made on Mr. Brooks' behalf; and (2) the amounts to which Mr. Brooks was entitled under the terms of the 1997 Compensation Committee Resolution and amounts that the Company contractually owed to Mr. Brooks that were not paid." The Government seeks to preclude this "offset" testimony.

The Court has reviewed the exhibits submitted in connection with Mr. McGraw's proposed testimony. After so doing, the Court believes it is best to break Mr. McGraw's proffered testimony into three parts: (1) a comparison based on the 1997 Resolution; (2) a comparison based on "offsets" of monies that DHB allegedly owed Mr. Brooks (hereafter, "Debt Offsets"); and (3) a comparison based on "offsets" of excess value that Mr. Brooks supposedly provided to DHB (hereafter, "Value Offsets"). The Court discusses each in turn.

---

party disclosures," that testimony goes to this case's "ultimate issue." Docket No. 1041 at 4. The Court is puzzled by this argument. In its case in chief, the Government produced considerable evidence indicating that the related party disclosures were false. Surely Mr. Brooks is entitled to show that they were accurate.

4

(1) <u>1997 Resolution Comparison Testimony</u>

Mr. Brooks proffers that, in part, Mr. McGraw will testify as a summary witness who will compare Mr. Brooks' personal expenses to the amount of "personal expenditures Mr. Brooks was entitled to under the terms of the 1997 Compensation Committee Resolution" ("1997 Resolution"). The Court agrees with Mr. Brooks that this testimony is relevant and admissible. At the core of the Government's so-called "looting" case is the Government's claim that the 1997 Resolution, which authorizes Mr. Brooks to spend DHB money on his personal expenses up to 10% of net profits, was a fraud. Mr. Brooks claims that the 1997 Resolution was legitimate, and that, through this Resolution, DHB authorized most or all of his personal spending. The Court has previously ruled that the 1997 Resolution's legitimacy is a question of fact for the jury. See <u>U.S. v. Hatfield</u>, __ F. Supp. 2d __, 2010 WL 623557 (E.D.N.Y. 2010). So Mr. Brooks is entitled to present evidence relevant to this theory, such as a comparison between his total personal expenditures and the amount of personal spending that the 1997 Resolution supposedly authorized. The Court notes that it is not admitting this evidence under any kind of "offset" theory. There are no "offsets" involved in comparing Mr. Brooks' actual personal spending with the amount that the 1997 Resolution supposedly authorized.

5

(2) <u>Debt Offset Theory</u>

Second, Mr. Brooks proffers that Mr. McGraw "will quantify for the jury certain amounts that the Company had contractual obligations to pay to Mr. Brooks but failed to do so. Mr. McGraw will then compare the government's allegations as to personal expenditures against such unreimbursed business expenditures and other unsatisfied contractual obligations." In other words, Mr. McGraw will supposedly testify about DHB's various debts to Mr. Brooks, and then compare those debts to Mr. Brooks' personal spending, under a theory that Mr. Brooks was entitled to "offset" the Company's debt by spending company money for personal reasons. Mr. Brooks argues that this testimony is relevant because: (a) the Audit Committee relied upon such offsets; (b) DHB implicitly authorized these offsets; and (c) the offset theory goes to Mr. Brooks' intent.

For now, the Court disagrees. With respect to (a), Mr. Brooks is correct that the Audit Committee did, in a sense, offset some of DHB's debts to Mr. Brooks from Mr. Brooks' personal expenditures. But Mr. Brooks has not proffered that Mr. McGraw's summary testimony will be limited to <u>what</u> the Audit Committee actually considered. And, without such a proffer, Mr. McGraw's testimony will be substantially more confusing than probative.

6

With respect to (b), Mr. Brooks has not proffered sufficient evidence to suggest that DHB engaged in the kind of implicit offsets that Mr. Brooks suggests. And Mr. Brooks certainly has not proffered enough evidence to tie any "implicit offset" program to the debts and personal expenses that Mr. McGraw will testify about. So, even if DHB implicitly permitted <u>some</u> offsets (and there is no evidence to suggest that was the case), Mr. Brooks has proffered nothing to suggest that Mr. McGraw's testimony will be limited to summarizing those authorized offsets, as opposed to every conceivable offset that Mr. Brooks could potentially claim.

Finally, with respect to (c), the Court agrees that Mr. McGraw's proffered testimony could, arguably, go to showing Mr. Brooks' lack of intent. That being said, the Court does not yet have a sufficient understanding regarding the basis for Mr. McGraw's summaries. Without such basis, the Court cannot determine whether to admit Mr. McGraw's summary testimony.

Given the above, the Court has decided to schedule a non-jury hearing for May 27, 2010, at which time Mr. Brooks can present whatever evidence and oral argument he likes in support of Mr. McGraw's Debt Offset testimony.[2]

---

[2] In support of the Debt Offset evidence, Mr. Brooks claims that there was no fraud unless the Government proves beyond a reasonable doubt that DHB did not permit this offsetting. Docket No. 1031 at 6. The Court disagrees. This is a

(3) <u>Value Offset Theory</u>

Finally, Mr. Brooks seeks to have Mr. McGraw testify about the supposed "net benefit" DHB received from Mr. Brooks' loans. Apparently, Mr. McGraw will testify that, although DHB paid Mr. Brooks interest at rates between 9% to 12%, he could have charged a 25% "reasonable rate of return." Docket No. 1031-1 at 52. Thus, Mr. McGraw concludes that DHB enjoyed a "net benefit" of more than $10.5 million from Mr. Brooks' loans, which Mr. McGraw intends to use in comparison to Mr. Brooks' personal spending.

This "evidence" is irrelevant and inadmissible. If Mr. Brooks thought that DHB wasn't paying him enough interest, his remedy was to not loan money or demand a higher rate. Once Mr. Brooks loaned money to DHB at rates of 9-12%, that is all that DHB owed him. Mr. Brooks cannot get "credit" for a higher interest rate that DHB never agreed to pay, much less use that hypothetical, unauthorized and anti-contractual interest rate to "offset" his personal spending. Nor does the Court agree that any of this supposed evidence is relevant for intent.

---

securities fraud case. Thus, what matters is disclosure. The Government's so-called "looting" case alleges a failure to disclose both Mr. Brooks' authorized and his unauthorized compensation. <u>See</u> 2010 WL 1930253, *1. If DHB authorized Mr. Brooks' personal expenses through "offsets," then DHB did not fail to disclose Mr. Brooks' unauthorized compensation. But DHB might still have failed to sufficiently disclose Mr. Brooks' <u>authorized</u> compensation.

8

In any event, this evidence is also inadmissible for another reason: Mr. McGraw is currently noticed only as a summary witness. But this is not summary testimony. Mr. Brooks has not introduced, nor has he proffered that he will introduce, testimony suggesting that he could have charged 25% on his loans to DHB. Likewise, Mr. Brooks has neither introduced nor proffered evidence to suggest that DHB would have agreed to pay him 25%. And, to the extent that Mr. Brooks will now claim that this is expert and not summary testimony, Mr. Brooks has failed to set forth Mr. McGraw's methodology or work papers. For instance, Mr. Brooks has provided nothing to suggest how Mr. McGraw reached that 25% figure. See FED. R. EVID. 703. Nor has Mr. Brooks proffered evidence suggesting that Mr. McGraw has any "specialized knowledge" (such as witchcraft or psychic abilities) that would enable him to provide a legitimate expert opinion concerning DHB's state of mind between 1996 and 2003, and thus, an opinion as to the interest rate that DHB would have agreed to pay, but did not.

The Court will not admit this evidence. Nor will the Court entertain testimony, oral argument, or motions to reconsider why it should admit this evidence.

## CONCLUSION

The Government's motion is GRANTED IN PART, DENIED IN PART and otherwise held in abeyance.

SO ORDERED.

```
          /s/
Joanna Seybert, U.S.D.J.
```

Dated:    Central Islip, New York
          May 21, 2010