```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
UNITED STATES OF AMERICA,

         -against-                          MEMORANDUM AND ORDER
                                            06-CR-0550 (JS)
SANDRA HATFIELD, DAVID H. BROOKS,
PATRICIA LENNEX,

                Defendants.
-----------------------------------X
APPEARANCES:
For Government:      Richard Thomas Lunger, Jr., Esq.
                     Christopher Allen Ott, Esq.
                     James Halleron Knapp, Esq.
                     James M. Miskiewicz, Esq.
                     United States Attorneys Office
                     610 Federal Plaza
                     Central Islip, NY 11722-4454
For Defendants:

Sandra Hatfield      Roland G. Riopelle, Esq.
                     Maurice H. Sercarz, Esq.
                     Sercarz & Riopelle, LLP
                     152 West 57th Street, 24th Floor
                     New York, NY 10019

David Brooks         John C. Meringolo, Esq.
                     Meringolo and Associates, P.C.
                     1790 Broadway, Suite 1501
                     New York, NY 10019

                     Zaki I. Tamir, Esq.
                     Gofer Tamir and Assoc.
                     55 Broad Street
                     New York, NY 10004

                     James M. LaRossa, Esq.
                     240 West End Avenue
                     New York, NY 10023

                     Kenneth Ravenell, Esq.
                     William H. Murphy, Jr., Esq.
                     The Murphy Firm
                     1 South Street, 23rd Floor
                     Baltimore, MD 21202
```

```
                    Richard Ware Levitt, Esq.
                    Yvonne Shivers, Esq.
                    Law Offices of Richard W. Levitt
                    148 E. 78th Street
                    New York, NY 10021

                    Roger V. Archibald, Esq.
                    William C. Thompson, Esq.
                    16 Court Street
                    Brooklyn, NY 11241
```

SEYBERT, District Judge:

Still pending before the Court is the Government's motion to exclude "Debt Offset" testimony from Kenneth McGraw, who Mr. Brooks noticed as a summary witness. For the foregoing reasons, this motion is GRANTED IN PART AND DENIED IN PART.

## DISCUSSION

Mr. Brooks has proffered that Mr. McGraw will provide summary testimony into the following areas: (1) unpaid salary; (2) unreimbursed expenses for business use of Mr. Brooks' personal aircraft; (3) unreimbursed expenses for business use of Mr. Brooks' Florida residence; (4) unreimbursed expenses for business use of Mr. Brooks' New York residence; (5) unreimbursed life insurance premiums; and (5) cash value of foregone benefit of having a Florida chauffer. The Court discusses each in turn.

(1) Unpaid Salary

Mr. Brooks proffers that Mr. McGraw will compare the amount of salary that Mr. Brooks was contractually entitled to with the amount of salary he actually received, based on his

2

employment contracts and the relevant SEC filings. The Government does not object to this testimony, and the Court finds that it is relevant to the issue of Mr. Brooks' intent, among other purposes. Accordingly, the Court does not exclude this testimony.

Mr. McGraw may not, however, testify that DHB was "struggling to survive and strapped for cash" between 1996 and 2000. Docket No. 1053 at 3. Mr. McGraw is not a fact witness. And he has not been qualified as an expert on DHB's historical financial condition.

(2) <u>Unreimbursed Business Use of Aircraft</u>

The Government "does not object to Mr. McGraw 'relying upon and incorporat[ing] the analysis of charter expert witness, Mr. Gil Wolin, into his qualification of unreimbursed business expenses." Docket No. 1092 at 2. Consequently, Mr. McGraw may testify as a summary witness in this regard.

(3) <u>Unreimbursed Business Use of Florida Residence</u>

Under the terms of his 1996 and 2000 employment agreements, Mr. Brooks was entitled to have DHB reimburse him for the business use of his Florida residence. In August 2004, the terms of this arrangement changed, and DHB began paying Mr. Brooks the fair rental value of the condominium.

Mr. Brooks seeks to admit, through Mr. McGraw, evidence showing that the condominium's fair rental value

between 1996 and August 2004 significantly exceeded the expenses that DHB paid to maintain that condominium (e.g., taxes and condominium fees), and did not reflect all the expenses that Mr. Brooks allegedly incurred, such as depreciation. This is not appropriate summary testimony. Mr. Brooks has proffered nothing to indicate that DHB agreed to pay him his apartment's fair rental value between 1996 and August 2004. Nor do the underlying documents reflect any such obligation. Rather, they indicate that DHB agreed only to pay Mr. Brooks' "expenses." Thus, this proffered "summary testimony" is nothing of the sort. More accurately, it is another example of Mr. Brooks' spurious attempts to argue, ex post, that he should somehow get "credit" for money that DHB never agreed to pay him, by unilaterally rewriting his agreements with the Company. As the Court has repeatedly stressed, such testimony is both irrelevant and highly confusing, especially in the absence of any evidence indicating that DHB would have agreed the terms that Mr. Brooks now feels would have been more equitable to him.

(4) Unreimbursed Business Use of New York Home

Under the terms of his 1996 and 2000 employment agreements, Mr. Brooks was entitled to reimbursement of business-related expenses associated with his New York home. In 2004, the arrangement changed. DHB's Audit Committee decided to instead reimburse Mr. Brooks for the corporate use of his New

York home in a net amount of the fair rental value of the allocable share of the New York home used to conduct business of the corporation, and Mr. Brooks agreed to this change.

Mr. Brooks now seeks to argue, through Mr. McGraw, that, due to the 2004 Audit Committee resolution, he was entitled to an allocable share of the fair rental value of his home from 1996 onward. Much like with respect to Mr. Brooks' argument concerning his Florida home, this is not appropriate summary testimony. There is no factual evidence to support that DHB agreed to reimburse him for his New York home based on the home's fair rental value for the period <u>before</u> the 2004 Audit Committee resolution. And Mr. Brooks' actual employment contracts say nothing of the sort. Thus, Mr. McGraw has no legitimate factual evidence to summarize.

(5) <u>Life Insurance Premiums</u>

Mr. Brooks' 1996 and 2000 employment agreements entitled him to "any fringe benefit which are or may be provided by the Employer to its other officer [sic] and or its employees. Such benefits are to include health benefits for Employee and his family and life insurance." Mr. Brooks seeks to have Mr. McGraw provide expert testimony that "it would have been reasonable under the terms of the employment contracts for the Company to have paid" the premiums for a $20 million life insurance policy Mr. Brooks purchased for himself. Docket No.

1053 at 8. In so doing, this is yet another attempt to introduce expert testimony concerning the "reasonableness" of Mr. Brooks' compensation, only worse. Docket No. 1018 (excluding Mr. McGraw's proposed testimony on the reasonableness of Mr. Brooks' compensation). Under the Debt Offset theory, Mr. McGraw would not only testify as to the compensation he thought "reasonable." He would then use that mythical compensation, which DHB never authorized or paid, as a means of offsetting Mr. Brooks' alleged unauthorized expenditures.

In reality, of course, Mr. Brooks' 1996 and 2000 employment agreements did not authorize payment for a $20 million life insurance policy. They authorized only "fringe benefit which are or may be provided by the Employer to its other officer [sic] and or its employees." There is no evidence that DHB purchased a $20 million life insurance policy for any officer or employee. Nor is there any evidence that DHB agreed, or would have agreed, to pay such a policy on Mr. Brooks' behalf. Mr. McGraw's opinion as to whether it would have been "reasonable" for DHB to have done so is irrelevant. Likewise, Mr. Brooks' efforts to have Mr. McGraw "summarize" the various life insurance policies he himself purchased is irrelevant. Mr. Brooks' employment contracts did not authorize reimbursement for life insurance he chose to personally purchase, much less permit

Mr. Brooks to offset his personal life insurance premiums from personal expenses he charged to the Company.

(6) Car and Driver

Mr. Brooks' employment contract entitled him to a "car and driver" in "all locations." Supposedly, he did not use a paid driver in Florida. He wants Mr. McGraw to summarize the cash value of this foregone benefit.

Unlike with respect to much of the proposed Debt Offset testimony, there is evidence that DHB permitted its employees to take the cash value of a car allowance. Tr. 14740. So there is a colorable basis for this proposed testimony.

The problem, however, is that Mr. McGraw's proposed testimony is <u>not</u> summary testimony, but expert testimony. Mr. McGraw has not been noticed as an expert on how much Florida chauffeurs are paid. And Mr. Brooks has proffered no <u>admissible</u> evidence concerning what a Florida driver would have cost. Instead, Mr. McGraw intends to base his testimony on figures provided by payscale.com and Pavillion Agency, Inc. There is nothing in the record, however, to support that these figures are remotely accurate, much less authoritative. Mr. McGraw, a non-expert witness, cannot simply pull numbers from random non-admissible sources and then use these figures as the basis for summary testimony.

(7) <u>Loan Testimony</u>

The Court has previously rejected Mr. Brooks' effort to have Mr. McGraw testify about the loans Mr. Brooks provided to DHB. Docket No. 1046. Mr. Brooks again tries to admit similar evidence, under somewhat different reasoning. Specifically, Mr. Brooks seeks to have Mr. McGraw testify concerning: (1) whether Mr. Brooks' rate of return was reasonable; and (2) how the loans helped DHB survive difficult periods in the Company's history. Neither of these newfound reasons to admit the loan testimony are legitimate.

With respect to (1), the Court has already rejected Mr. Brooks' effort to have Mr. McGraw testify about the reasonableness of his compensation. Nevertheless, Mr. Brooks argues that this testimony is admissible "to refute the government's false and misleading contention – which it forwarded during its examination of Dawn Schlegal -- that Mr. Brooks received improper or excessive interest payments from DHB." Docket No. 1053 at 9-10. But this argument is not only frivolous, it deliberately misstates the record. Contrary to Mr. Brooks' claims, the Government never "conten[ded]" that Mr. Brooks "received improper or excessive interest payments." Nor did Dawn Schlegel so testify or opine. Rather, Dawn Schlegel repeatedly testified that <u>Mr. Brooks</u> directed DHB to limited its disclosure of interest payments to him, either because <u>Mr.</u>

8

Brooks thought that the payments were too high, or because he otherwise did not want a more complete disclosure.[1] Mr. McGraw's "reasonableness" opinion will do nothing to "refute" this testimony, because Mr. McGraw cannot opine on what Mr. Brooks told Ms. Schlegal.

With respect to (2), Mr. McGraw's opinion regarding whether Mr. Brooks' loans helped DHB survive is not proper summary testimony. Again, Mr. McGraw is not a fact witness. Nor has he been qualified as an expert on DHB's historical financial condition. If Mr. Brooks wishes to introduce this kind of evidence, he "should call a fact witness with personal knowledge to testify about his loans to the Company," as the Government has suggested. Docket No. 1092 at 5.

CONCLUSION

The Government's motion is GRANTED IN PART AND DENIED IN PART. Mr. McGraw may provide summary testimony concerning Mr. Brooks' unpaid salary and his expenses for unreimbursed business use of his aircraft. His Debt Offset testimony is otherwise excluded. This constitutes the Court's final

---

[1] See Tr. 5440 ("David didn't want to put in the total interest in this" because he said "[i]t was too much money"); Tr. 5444 ("The decision was made by David Brooks because he didn't want to see how much interest was going to him"); Tr. 5560 ("[Mr. Brooks] decided to just leave it and see if they caught it"); Tr. 6311 ("He did not want interest to be listed as repaid interest . . . . The interest expense is language changed over the years because he didn't want to highlight how much interest he was getting from the company").

9

decision, and the Court will not entertain any motions for reconsideration.

SO ORDERED.

```
                              _____/s/_____
                              Joanna Seybert, U.S.D.J.
```

Dated:   Central Islip, New York
         June 6, 2010