UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA,

      -against-                      <u>MEMORANDUM AND ORDER</u>
                                           06-CR-0550 (JS)

SANDRA HATFIELD, DAVID H. BROOKS,
PATRICIA LENNEX,

                  Defendants.
------------------------------------X

APPEARANCES:

For Government:      Richard Thomas Lunger, Jr., Esq.
                     Christopher Allen Ott, Esq.
                     Christopher Charles Caffarone, Esq.
                     James Halleron Knapp, Esq.
                     James M. Miskiewicz, Esq.
                     United States Attorneys Office
                     610 Federal Plaza
                     Central Islip, NY 11722-4454

For Defendants:

Sandra Hatfield     Roland G. Riopelle, Esq.
                     Maurice H. Sercarz, Esq.
                     Sercarz & Riopelle, LLP
                     152 West 57th Street, 24th Floor
                     New York, NY 10019

David Brooks        John C. Meringolo, Esq.
                     Meringolo and Associates, P.C.
                     1790 Broadway, Suite 1501
                     New York, NY 10019

                     Zaki I. Tamir, Esq.
                     Gofer Tamir and Assoc.
                     55 Broad Street
                     New York, NY 10004

                     James M. LaRossa, Esq.
                     240 West End Avenue
                     New York, NY 10023

                     Kenneth Ravenell, Esq.
                     William H. Murphy, Jr., Esq.
                     The Murphy Firm
                     1 South Street, 23rd Floor

Baltimore, MD 21202

Richard Ware Levitt, Esq.
Yvonne Shivers, Esq.
Law Offices of Richard W. Levitt
148 E. 78th Street
New York, NY 10021

Roger V. Archibald, Esq.
William C. Thompson, Esq.
16 Court Street
Brooklyn, NY 11241

SEYBERT, District Judge:

Pending before the Court is Sandra Hatfield's Fed R. Crim. P. 29(a) motion for a judgment of acquittal. For the foregoing reasons, that motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

Ms. Hatfield is on trial for: (1) securities fraud and conspiracy to commit securities fraud (Counts 1 and 2); (2) mail fraud, wire fraud, and conspiracy to commit mail fraud and wire fraud (Counts 3-5); (3) insider trading (Counts 12-14); and (4) obstruction of justice and conspiracy to obstruct justice (Counts 15-16). The Government has rested. Filing this motion, Ms. Hatfield contends that the Government's evidence is insufficient to convict her.

DISCUSSION

I.    <u>Standard Of Review</u>

Federal Rule of Criminal Procedure 29 provides that, on a defendant's motion, the trial court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  A Rule 29(a) motion focuses upon the sufficiency of the Government's evidence in its case in chief.  "Under Rule 29, a district court will grant a motion to enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." <u>United States v. Jackson</u>, 335 F.3d 170, 180 (2d Cir. 2003).  Thus, "the court may enter a judgment of acquittal only if the evidence that the defendant committed the crime is non-existent or so meager that no reasonable jury could find guilt beyond a reasonable doubt."  <u>United States v. Guadagna</u>, 183 F.3d 122, 130 (2d Cir. 1999) (internal citations and quotations omitted). The Court must view the evidence "in the light most favorable to the Government and all permissible inferences drawn in the Government's favor." <u>Jackson</u>, 335 F.3d at 180.

II.   <u>The Obstruction Of Justice Counts</u>

Although Ms. Hatfield moves for acquittal on all counts, her brief devotes most of its attention to Counts 15 and 16, which charge her with obstructing justice and conspiring to

3

obstruct justice. So the Court considers these counts first. Having done so, the Court finds that a rational jury could convict Ms. Hatfield of these charges on at least two grounds.[1]

First, the evidence supports a finding that Ms. Hatfield sought to mislead FTI, the independent auditor DHB hired to respond to a pending SEC investigation, with respect to the gross profit margin ("margin") that DHB and TAP earned. Specifically, the jury could find that Ms. Hatfield determined that TAP earned a 39% margin, while DHB earned only an 8% margin. Tr. 5621-5624. The jury could further find that, after FTI began its investigation, Ms. Hatfield realized that it was "bad" that TAP's profit "was greater than the profit made by Point Blank." Tr. 5621. The jury could then find that Ms. Hatfield, along with her co-conspirators, gave FTI inaccurate numbers "[s]o TAP would make less money on paper." Tr. 5626-27; see also Tr. 6132-6133. In so doing, the jury could find that Ms. Hatfield sought to falsely make it appear that DHB's profit "was the same or similar to the profit on Tactical Armor Products. So it would appear to be at arm's length." Tr. 5629; see also Tr. 6133. And the jury could find that Ms. Hatfield's

---

[1] The Government's response to Ms. Hatfield's motion contends that Ms. Hatfield obstructed justice in many other ways, and contains numerous citations to the record. Because the Court finds that a reasonable jury could convict Ms. Hatfield on at least two separate grounds, it does not address the Government's remaining arguments.

conduct included altering DHB's financial data, "to bring up . . . . DHB's percent to a more reasonable level," so "it would appear that the transactions between the companies were at arm's length and reasonable." Tr. 5630-31. And, because DHB hired FTI to respond to an SEC investigation, the jury could find that – in misleading FTI – Ms. Hatfield sought to obstruct the SEC. See U.S. v. MacPherson, 424 F.3d 183, 193 (2d Cir. 2005) (the jury can draw "reasonable inferences" regarding a defendant's mens rea).

Second, the jury could find that Ms. Hatfield obstructed justice, and conspired to obstruct justice, by signing a backdated lease agreement with TAP. Specifically, the jury could find that although dated in 2001, Ms. Hatfield actually signed the lease in 2003, and created this document to manufacture the false appearance that TAP used DHB's space on an "arm's length" basis. Tr. 5918. And the jury could reasonably infer that Ms. Hatfield did so in response to UNITE's letter to the SEC, which accused DHB of failing to report its related party transactions with TAP. Among other things, this backdated lease was prepared as part of a binder DHB created to respond to UNITE's letter. Tr. 5889-5890. And DHB gave this binder to its auditors, "various attorneys, anybody and everybody." Tr. 5890. Given these facts, the jury can reasonably infer that Ms. Hatfield executed this backdated contract as part of a

conspiracy to frustrate any inquiry the SEC might make into UNITE's allegations.  See MacPherson, 424 F.3d at 193.

III. The Remaining Counts

Ms. Hatfield's Rule 29 motion does not seek to dismiss the Superseding Indictment's remaining counts on a count-by-count basis.  Instead, Ms. Hatfield seeks to strike certain narrative portions of the Superseding Indictment.  Ms. Hatfield then argues that, if these narrative portions are struck, the Superseding Indictment's remaining counts cannot survive.  The Court thus addresses these narrative portions on a subject-by-subject basis.

A.    Reclassification Of Point Blank's Expenses

Ms. Hatfield argues that the record does not support the Superseding Indictment's allegations concerning fraudulently booked research and development expenses.  Consequently, she seeks to strike Superseding Indictment ¶¶ 19-22.  As explained below, the Court addresses ¶¶ 19-21 separately from ¶ 22.

i.    ¶¶ 19-21

Paragraphs 19-21 allege, essentially, that Ms. Hatfield manipulated (and conspired to manipulate) DHB's financial results to generate the "27 percent to 28 percent" gross profit margin that professional stock market analysts expected.  Superseding Indictment at ¶ 21; see also ¶ 19.  Construing the evidence in the light most favorable to the

Government, the record supports these allegations. Ms. Schlegel testified that "[o]ne time" when DHB's "margins" were expected to come in "a little lower," Ms. Hatfield responded "can't we just increase research and development?" Tr. 5803-04. Ms. Schlegel further testified that once, when DHB's gross profit margin came in <u>higher</u> than expected, Ms. Hatfield agreed not to book any R&D expense because DHB didn't want to "highlight" the strong GPM number. Tr. 5809. And Ms. Schlegel testified that Ms. Hatfield agreed to not book R&D that quarter even though "there was R&D, because we just developed a brand-new product called DAPS." Tr. 5809. This testimony more than suffices to support ¶¶ 19-21's allegations, at least as to those two specific incidents.

ii. <u>¶ 22</u>

The Court reserves judgment concerning whether to strike ¶ 22's allegations. This paragraph alleges that DHB fraudulently reclassified $7 million in 2003, $6 million in 2004, and $9 million in 2005. But, as noted above, the Government's citations suggest – at most - that Ms. Hatfield agreed to fraudulently inflate research and development one time (not necessarily during the 2003 to 2005 period), and fraudulently deflate it another time. These acts do not necessarily evidence a larger fraudulent scheme.

True, the Government's citations also suggest that, beginning in April 2003, Ms. Hatfield instructed Ms. Schlegel to book 3% of the cost of goods as research and development. Tr. 5865. But the Government cites to nothing suggesting that DHB did not, in fact, spend approximately 3% of its cost of goods on R&D. And there is ample evidence that DHB performed at least some R&D. So, even construed in the light most favorable to the Government, the cited testimony does not support a finding that Ms. Hatfield's 3% reclassification instruction was fraudulent, much less that it was fraudulent in the amounts the Superseding Indictment specifies. Rather, at most, it suggests that Ms. Hatfield and Ms. Schlegel acted with extreme negligence in performing their duties as DHB officers, by reporting what Ms. Hatfield "kn[ew]," rather than using an "inventory system that tracks [R&D] from beginning to end." Tr. 5796-97.

The Court does not, however, have an encyclopedic recollection of this case's entire record. So there may be evidence supporting Ms. Hatfield's involvement in a larger fraudulent scheme (beyond sloppy recordkeeping) that the Government failed to properly present in opposing Ms. Hatfield's motion. Because the Government lacks any effective way to remedy a Court error in this regard, the Court exercises its discretion to not strike ¶ 22 at this time. Instead, the Court ORDERS the Government to SHOW CAUSE by July 9, 2010 why it

should not strike ¶ 22, at least as to Ms. Hatfield. Ms. Hatfield may respond before the trial resumes on July 12, 2010. No replies are necessary.

   B.   TAP Disclosures

   Ms. Hatfield argues that "there is no evidence that [she] was aware of, or agreed to, efforts by Mr. Brooks to refrain from disclosing [TAP] in public filings." The Court agrees that the Government's evidence does not directly link Ms. Hatfield to DHB's public filings. But a reasonable jury could find that Ms. Hatfield sought to hide TAP from DHB's auditors. Among other things, a reasonable jury could find that, in 2002, Ms. Hatfield "told [Ms. Schlegel] to leave [TAP] off" a list of top vendors that DHB gave to its auditors. Tr. 5515; see also Tr. 5770. And, as discussed above, a reasonable jury could also find that Ms. Hatfield provided inaccurate information to auditors in light of UNITE's letter to the SEC, including executing a backdated contract and massaging DHB's and TAP's gross profit margin. And, drawing reasonable inferences in the Government's failure, these alleged misstatements and omissions to auditors proximately resulted in DHB making similar misstatements and omissions in its public filings.[2]

_____

[2] The Court notes, however, that the parties did not substantively brief this issue. To the extent that Ms. Hatfield can identify binding or persuasive authority suggesting that misstatements or omissions to auditors cannot lead to criminal

C.  <u>Executive Compensation</u>

The Superseding Indictment alleges that Ms. Hatfield engaged in a scheme to divert DHB money through the "disbursement of checks to HATFIELD's husband and son for the benefit of HATFIELD." Superseding Indictment ¶ 31. The Superseding Indictment further alleges that DHB made "undisclosed payments to the defendant SANDRA HATFIELD'S husband and son" that "were not disclosed to DHB's shareholders or to the investing public," and "were not accounted for in the books and records of DHB or in DHB's disclosures to the IRS as income to BROOKS or HATFIELD." <u>Id.</u> at ¶ 36. Ms. Hatfield argues that the Government failed to adduce sufficient evidence concerning these allegations.

The Court partially agrees. Construing the evidence in the light most favorable to the Government, a reasonable jury could find that Ms. Hatfield conspired to hide $94,000 of her compensation by arranging for DHB to pay this money to her husband's company, WGH Consulting, rather than herself. Tr. 5984-86. In this regard, Ms. Schlegel testified that, although DHB ostensibly made these payments to Ms. Hatfield's husband, "it was not payment for his services for the most part. My understanding is that it was payment for Sandra's services."

liability predicated on misstatements or omissions in public filings, the Court will accept a timely motion for reconsideration.

Tr. 5989. And, because DHB's payments to WGH Consulting fell just below the threshold requiring their public disclosure, the jury could reasonably infer that Ms. Hatfield structured these payments to avoid disclosure requirements.

The Government's allegations concerning DHB's payments to Ms. Hatfield's son, Keith, do not fare as well. Ms. Schlegel testified that Mr. Brooks directed her to pay Keith Hatfield $95,000 for legal work he performed in Florida. Tr. 6069. Ms. Schlegel testified that, although she did not have an invoice, DHB paid Keith Hatfield, disclosing the payment as a related party transaction in its public filings. Tr. 6069. Ms. Hatfield then testified that, upon Ms. Hatfield's request, DHB amended its filings to list the payment as part of Ms. Hatfield's compensation because "$95,000 in a small town in Tennessee is a lot of money, and she doesn't want to cause any grief for her son, so she wants it to be characterized as a bonus to her." Tr. 6069. None of this evidence supports the Superseding Indictment's allegations. There is no evidence that DHB paid Keith Hatfield $95,000 for Ms. Hatfield's benefit. <u>See</u> Superseding Indictment ¶ 31. Indeed, the only evidence concerning this allegation is exculpatory: Mr. Brooks' claim that Keith Hatfield was "doing a lot regarding the union organizing and being down in Florida on a full-time basis"; and Ms. Hatfield's request that the money be re-characterized as a

bonus to her to avoid causing "grief for her son" due to "small town" Tennessee culture.[3]   At most, Ms. Schlegel testified that she "didn't have" an invoice from Keith Hatfield.   But, in the absence of any <u>evidence</u> linking the Keith Hatfield payments to a desire to compensate Ms. Hatfield, the Court will not permit the jury to draw the inference that no invoice must mean fraud. Consequently, the Court STRIKES the allegations concerning the Keith Hatfield payments.

   D.   Lying To Auditors

      Ms. Hatfield alleges that the record does not support the Superseding Indictment's allegation that she lied to DHB's independent auditors.   The Government responds that Nicole Mannarino's testimony sufficiently establishes this allegation. The Court agrees.

   E.   Non-Existent Inventory

      Ms. Hatfield argues that her statement to Ms. Mannarino "establishes that Ms. Hatfield agreed to provide an estimate of inventory in good faith."   Docket No. 1025 at 3. The Court disagrees.   The jury is free not to credit Ms. Hatfield's exculpatory statements to Ms. Mannarino.   Ms. Hatfield further argues that "[t]here is no evidence . . . that

---

[3] Ms. Hatfield's request might be strange.   It might, arguably, even be securities fraud, as it suggests that Ms. Hatfield wanted DHB to falsely <u>inflate</u> her compensation in public filings.   But it is not the specific kind of securities violation charged in Superseding Indictment ¶¶ 31, 35.

she understood the 'plug' of 62,000 interceptor vests was an improper way to reflect the estimated inventory" at DHB. Docket No. 1025 at 3. Again, the Court disagrees. Among other things, Ms. Mannarino testified that Ms. Hatfield informed her that DHB "added 62,975 shells" to "fix th[e] problem" of DHB's gross profit margin "dropp[ing] to 11 and a half percent." Tr. 11100. The jury is free to infer from this testimony that Ms. Hatfield understood the "plug" as a way to inflate DHB's financial results, rather than as a mechanism used to "reflect the estimated inventory."

F.    Interceptor Vest Inventory

Ms. Hatfield argues that the allegations concerning the Interceptor vest inventory depend upon Travis Brooks' testimony, which Ms. Hatfield contends is improper. Because the Court has already denied Ms. Hatfield's motion to strike this testimony, it likewise denies her motion to strike the Interceptor vest allegations.

IV. Honest Services Fraud

In Skilling v. U.S., 2010 WL 2518587, *28 (2010) and Black v. U.S., 2010 WL 2518593, *4 (2010), the United States Supreme Court held that 18 U.S.C. § 1346's prohibition on "depriv[ing] another of the intangible right of honest services" "criminalizes only [] bribe-and-kickback" schemes. Here, the Government has not alleged, much less proved, that Ms. Hatfield

13

engaged in bribes or kickbacks.  Thus, Ms. Hatfield is acquitted of Counts 4-6 to the extent that those counts allege violations of 18 U.S.C. § 1346.  This does not mean, however, that Ms. Hatfield is entitled to acquittal on the mail and wire fraud counts.  For the mail and wire fraud counts plead an alternate, legitimate theory: that Ms. Hatfield sought to "obtain money and property from DHB, by means of materially false and fraudulent pretenses" and executed this scheme through the wires and mails. Superseding Indictment ¶¶ 92, 94, 96.  Money and property fraud survives the Supreme Court's recent decisions.  <u>See</u>, <u>generally</u>, <u>Black</u>, 2010 WL 2518593, *5; 18 U.S.C. §§ 1341, 1343.

CONCLUSION

Ms. Hatfield's Rule 29 motion is GRANTED IN PART AND DENIED IN PART.  The Court does not acquit Ms. Hatfield of any count in the Superseding Indictment.  But the Court does acquit Ms. Hatfield of any charges brought under 18 U.S.C. § 1346.  And the Court strikes any allegation concerning DHB's $94,000 payment to Keith Hatfield.  In addition, the Government is ORDERED TO SHOW CAUSE before July 9, 2010, why the Court should also not strike ¶ 22.

SO ORDERED.

_____
Joanna Seybert, U.S.D.J.

Dated:     Central Islip, New York
           July 7, 2010